IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JAMES JOHNSON,** | |
| **Plaintiff,** | |
| v. | Case No. 21-CV-00449-SPM |
| **MARK LITHERLAND,** | |
| **Defendant.** | |

### MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendant Dr. Mark Litherland, D.M.D. (Doc. 61). *Pro se* Plaintiff James Johnson filed a Response. (Doc. 66). Having been fully informed of the issues presented, the Motion for Summary Judgment is **GRANTED**.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

*Pro se* Plaintiff James Johnson is an inmate presently incarcerated at Illinois River Correctional Center in Canton, Illinois. (*See* Doc. 1). Johnson's lawsuit arises from what he alleges was failure to treat a broken tooth in 2020 and 2021. (*See id.*, pp. 8–10). Johnson alleges that he submitted various sick call requests and grievances for severe pain in his tooth which prevented him from eating and drinking and caused headaches. (*See id.*, pp. 8–9, 13–14). He filed the instant suit on May 4, 2021 alleging Eighth Amendment deliberate indifference claims against Defendants Dr. Mark Litherland; John Doe (Director of Medical Services at Wexford Health Sources, Inc.);

Dr. Steven Meeks; Illinois Governor J.B. Pritzker; Dr. Tran; Jane Doe 1 (Dental Assistant); Jane Doe 2 (Director of Registered Nurses at Wexford); and Wexford itself. (*See* Doc. 1, pp. 1–4). This Court conducted preliminary review of Johnson's Complaint pursuant to 28 U.S.C. § 1915A on March 29, 2022. (Doc. 12). The Court held that Johnson had stated colorable claims against Defendants Litherland, Tran, Meeks, Jane Doe 1, Jane Doe 2, and John Doe Director of Medical Services, but dismissed the claims against Governor Pritzker and Wexford for failure to state a viable claim against them. (*Id.*, p. 5). The Court dismissed Johnson's claims against the John/Jane Doe Defendants on February 7, 2023 for failure to substitute names or identify these parties by name by December 26, 2024. (*See* Doc. 46, p. 2). Defendants Tran and Meeks filed motions for summary judgment for failure to exhaust administrative remedies (Docs. 38, 43) which were granted on August 8, 2023 (*see* Doc. 53).

Defendant Litherland's Motion for Summary Judgment was filed on June 21, 2024. (*See* Doc. 61). Plaintiff Johnson filed a Response on August 15, 2024 (Doc. 66) to which Defendant Litherland replied (Doc. 67).

### APPLICABLE LAW AND LEGAL STANDARDS

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go

beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008) (quoting *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008)). The non-movant cannot simply rely on its pleadings; the non-movant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391, 394 (7th Cir. 1993), *cert. denied,* 510 U.S. 1111 (1994); *Celotex*, 477 U.S. at 323–24).

## ANALYSIS

The Eighth Amendment prohibits cruel and unusual punishment and deliberate indifference to the "serious medical needs of a prisoner [which] constitutes

the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (citation omitted). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Claims for deliberate indifference have an objective and a subjective component. *Estelle v. Gamble*, 429 U.S. 97 (1976). Johnson must establish that he suffered from an objectively and sufficiently serious medical condition. *Cesal v. Moats,* 851 F.3d 714, 721 (7th Cir. 2017). Johnson must also show that Defendants actually knew of, but disregarded, a substantial risk to the inmate's health. *Cesal,* 851 F.3d at 721. "Intentional delays in medical care may constitute deliberate indifference, even if the inmate's medical condition is non-life threatening." *Id.* at 722 (quoting *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011)). "A doctor's choice of 'easier and less efficacious treatment' for an objectively serious medical condition also may be sufficient . . . [,] [b]ut 'mere disagreement with a doctor's medical judgment' is not enough to support an Eighth Amendment violation." *Id.* (first quoting *Estelle*, 429 U.S. at 104 & n.10; then quoting *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010)).

Additionally, it is well-settled that mere negligence is not enough to establish a defendant's deliberate indifference. *See, e.g.*, *Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986). In fact, even gross negligence is insufficient. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Instead, deliberate indifference is comparable to criminal

recklessness. *Thomas v. Blackard,* 2 F.4th 716 (7th Cir. 2021) (citing *King*, 680 F.3d at 1018). "'Reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002) (quoting *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999)).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources*, Inc., 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (quoting *Zaya v. Sood,* 836 F.3d 800, 805–06 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant knew better than to make the medical decision that [he] did." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)) (cleaned up). A medical professional's choice of an "easier and less efficacious treatment" can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *Berry,* 604 F.3d at 441 (quoting *Estelle*, 429 U.S. at 104 & n.10). The Seventh Circuit has "characterized the standard as imposing a high hurdle on plaintiffs because it requires a 'showing as something approaching a total unconcern for the prisoner's

welfare in the face of serious risks.'" *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012) (quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)).

The first question before the Court is whether Johnson's broken tooth qualified as a "serious" medical condition. First, "the Supreme Court contemplated that medical conditions far less critical than 'life-threatening' would be encompassed by the term." *Gutierrez* at 1370. "Indeed, the inmate in *Estelle* based his medical care claim 'solely on the lack of diagnosis and inadequate treatment of his back injury,' which had been diagnosed by prison doctors as a lower back strain and treated with muscle relaxants and pain medication." *Id.* at 1370–71 (quoting *Estelle* at 107). The Seventh Circuit concluded in *Gutierrez* that an infected pilonidal cyst was a sufficiently "serious" medical need, like the back injury in *Estelle*; injuries from an assault by prison guards in *Cooper v. Casey*, 97 F.3d 914, 917–17 (7th Cir. 1996); and psychological treatment in *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). *See Gutierrez* at 1371–72. However, the Seventh Circuit put common colds, toes with removed toenails, and mild asthma as being outside the ambit of "serious" medical needs. *See id.* at 1372 (citing *Gibson v. McEvers*, 631 F.2d 95 (7th Cir. 1980); *Snipes v. DeTella*, 95 F.3d 586, 591 n.1 (7th Cir. 1996), *cert. denied*, 519 U.S. 1126 (1997); *Oliver v. Deen*, 77 F.3d 156 (7th Cir. 1996)).

With all of the above in mind, the Seventh Circuit noted that "[i]t is a far easier task to identify a few exemplars of conditions so plainly trivial and insignificant as to be outside the domain of Eighth Amendment concern than it is to articulate a workable standard for determining 'seriousness' at the pleading stage." *Id.* at 1372.

Notably, *Gutierrez* involved a suit dismissed at the pleadings, not a case at the point of summary judgment as in the instant case.

The Seventh Circuit has a developed line of cases establishing that decayed, broken, or damaged teeth are serious medical conditions. *See Munson v. Newbold*, 46 F.4th 678, 681 (7th Cir. 2022); *see also Green v. Beth*, 663 F. App'x 471, 473 (7th Cir. 2016) (citing *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005); *Flanory v. Bonn*, 604 F.3d 249, 255–56 (6th Cir. 2010); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004)); *Hoeft v. Menos*, 347 F. App'x 225, 227 (7th Cir. 2009) ("The complaint meets this standard. Dental care is one of the most important needs of inmates, and the symptoms Hoeft describes—six months of extensive pain from untreated cavities and tooth loss that prevented him from properly chewing his food—qualify as a serious medical condition." (citing *Farnham*, 394 F.3d at 480; *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001); *Cooper v. Schriro*, 189 F.3d 781, 783–84 (8th Cir. 1999); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)).

Dr. Litherland argues in the instant Motion that Johnson's tooth pain was not a serious medical need. (*See* Doc. 62, p. 12). "Although dental pain accompanied by or leading to some other dental problem can be a serious medical need, a toothache alone is not sufficient to establish an Eighth Amendment claim." (*Id.* (citing *Dorsey v. Taylor*, 2015 U.S. Dist. LEXIS 140753, *4 (N.D. Ill. 2015); *Farnham*, 394 F.3d at 480 (7th Cir. 2005)). He argues that "[b]ecause Plaintiff's tooth pain was deemed non-emergent each time he was seen by Dr. Litherland, Dr. Litherland prescribed

Plaintiff only over the counter pain medication (ibuprofen)" and that "per Plaintiff's own testimony, such medication effectively treated his tooth pain." (*Id.*, p. 13 (citing *id.*, Ex. A, 31:5–13, 31:19–24)). Dr. Litherland argues that "[t]he facts of this case are analogous to those in *Olson* where the Court found that a broken tooth that only required over the counter pain medication before it was removed is not evidence of a serious medical need." (*Id.* (citing *Olson v. Morgan*, 750 F.3d 708, 713–14 (7th Cir. 2014))).

In opposition, Johnson argues that he was "in severe pain" and that his tooth pain "caused headaches, kept him from drinking, eating, and sleeping." (Doc. 66, p. 7). In his Deposition, Johnson says:

> I couldn't eat meals like that. If I ate, it was very to a minimal [sic] and it was one side of my mouth. I couldn't drink anything. Couldn't put any liquid on the side -- drinks, I had to tip my head this way (indicating). Any things liquid I kept out of my mouth. It hurted [sic] too bad. I remember food, trying to eat it, and it hurt so bad.

(Doc. 62, Ex. A, 27:18–28:1). He also indicates that he lost weight because he "wasn't eating like [he] normally eat[s]." *Id.* 28:4.

The factual record indicates that Johnson first told Dr. Litherland about his dental issue on May 20, 2020 and then reiterated that his tooth had pain and sensitivity on June 16, 2020; August 12, 2020; and November 10, 2020.[1] (*See* Doc. 62, ¶¶ 7–16 (citations omitted)). Because of Illinois Department of Corrections ("IDOC") Covid-19 restrictions, Dr. Litherland was not able to perform a dental examination of

---

[1] Dr. Litherland went to visit Johnson at his cell on August 11, 2020, but he was not available. (*See* Doc. 62, ¶ 10). Johnson also failed to appear for a follow-up dental examination on September 2, 2020. (*See id.*, ¶ 12).

Johnson until the final time he saw him on November 10, 2020. (*See id.*, ¶¶ 15–16 (citations omitted)). In his examination, Dr. Litherland indicated that, while there was no noted decay to tooth #29, the B-root and enamel of tooth #29 were sensitive to the dental explorer and the B-cusp tip of tooth #29 was chipped. (*See id.*, ¶¶ 15 (citing *id.*, Ex. B, p. 4; *id.*, Ex. C, p. 7)). Considering the evidence in the manner most favorable to Johnson, the Court holds that a reasonable jury could find that Johnson's dental issues with tooth #29 were a sufficiently serious medical need in line with the first prong of the deliberate indifference standard. *See Cesal,* 851 F.3d at 721.

We then move to the question of whether Dr. Litherland was deliberately indifferent to Johnson's broken tooth. In *Cesal*, the Seventh Circuit found that a prison physician was not deliberately indifferent to an inmate's back injury because there was not "any reason in this record to think that starting with the physician assistant and nurse was not a reasonable step." *Id.* at 723. While Johnson argues that there were significant delays in his treatment, the Seventh Circuit has stated that "[o]ne thing which has long been clear in our Eighth Amendment cases is that the amendment is not coterminous with a medical malpractice claim." *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997) (citing *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996); *Oliver v. Deen*, 77 F.3d 156 (7th Cir. 1996); *Snipes v. DeTella*, 95 F.3d 586 (7th Cir. 1996), *cert. denied*, 519 U.S. 1126 (1997)). Additionally, prisoners are "not entitled to the best care possible" but rather "to reasonable measures to meet a substantial risk of serious harm to her." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). When a prisoner sought "specific treatment and foolproof protection from

infection," the Seventh Circuit stated that "[t]he Eight [sic] Amendment does not provide her with either." *Forbes*, 112 F.3d at 266.

As mentioned above, Dr. Litherland first saw Johnson on May 20, 2020. (*See* Doc. 62, ¶ 7 (citing *id.*, Ex. A, 23:16–19; *id.*, Ex. B, p. 2; Ex. C, p. 5)). While he visited Johnson at the door of his cell, Dr. Litherland "was unable to perform any type of dental evaluation due to IDOC COVID restrictions other than a visual examination of each patient at their cell door." (*Id.* (citing *id.*, Ex. B, p. 2; *id.*, Ex. C, p. 5)). Dr. Litherland states that he "did not believe [Johnson's] tooth pain was emergent as there was no indication based on Plaintiff's physical presentation at his cell door that he was in severe pain or had severe swelling," noting that "[h]e was not grimacing, and his face did not appear swollen." (*Id.* (citing *id.*, Ex. B, p. 2; *id.*, Ex. C, p. 5)). Dr. Litherland indicated that Johnson should be evaluated after the Covid restrictions were lifted and prescribed him ten days' worth of ibuprofen. (*See id.* (citing *id.*, Ex. A, 26:1–4; 29:1–4; *id.*, Ex. B, p. 2; *id.*, Ex. C, pp. 5, 16)).

Dr. Litherland saw Johnson again on June 16, 2020 at his cell door. (*See id.*, ¶ 8 (citing *id.*, Ex. A, 29:17–19; *id.*, Ex. B, p. 2; *id.*, Ex. C, p. 5)). Like on his May 20, 2020 encounter with Johnson, Dr. Litherland again states that Johnson did not show signs of swelling or severe pain, that he prescribed Johnson ibuprofen, and that he told Johnson that he was on the waiting list for a dental evaluation. (*See id.* (citing *id.*, Ex. B, p. 2; *id.*, Ex. C, pp. 5, 14)). He also proscribed a ten-day course of the antibiotic amoxicillin. (*See id.* (citing *id.*, Ex. B, p. 2; *id.*, Ex. C, pp. 5, 14)). Johnson

states in his Deposition that he "wasn't in so much pain as before" after taking his prescribed medication. (*See id.* (citing *id.*, Ex. A, 31:5–13, 31:19–24)).

Johnson filed Grievance #5-20-300 requesting dental treatment on May 21, 2020. (*See id.*, ¶ 9 (citing *id.*, Ex. E, Select Grievance Records for MSJ, 4–5)). Dr. Litherland responded on June 17, 2020, informing the counselor that he saw Johnson on June 16, 2020 and that Johnson would remain on the waiting list for a dental exam when the Covid restrictions were lifted by IDOC. (*See id.* (citing *id.*, Ex. E, Select Grievance Records for MSJ, 4–5)).

Dr. Litherland next saw Johnson on August 12, 2020.[2] (*See id.*, ¶ 11 (citing *id.*, Ex. B, p. 3; *id.*, Ex. C, p. 7)). Like the visit on June 16, 2020 described *supra*, Dr. Litherland noted that he did not believe Johnson's pain was emergent as neither swelling nor physical manifestations of severe pain were noted. (*See id.*, ¶ 11 (citing *id.*, Ex. B, p. 3)). Dr. Litherland again advised Johnson that he was on the priority list for a dental evaluation, prescribed him thirty days' worth of ibuprofen, and prescribed him amoxicillin for use if swelling occurred. (*See id.*, ¶ 11 (citing *id.*, Ex. B, p. 3; *id.*, Ex. C, pp. 7, 14)).

Dr. Litherland was able to conduct a dental examination of Johnson on November 10, 2020.[3] (*See id.*, ¶ 15 (citing *id.*, Ex. A, 39:13–40:6; *id.*, Ex. B, p. 4; *id.*,

---

[2] Dr. Litherland notes that he went to visit Johnson at his cell on August 11, 2020, but Johnson was "unavailable at that time for an unknown reason." (*Id.*, ¶ 10 (citing *id.*, Ex. B, p. 3; *id.*, Ex. C., p. 7)).
[3] Dr. Litherland notes that Johnson failed to show up for a follow-on evaluation at the dental clinic on September 2, 2020 (*see id.*, ¶ 12 (citing *id.*, Ex. B, p. 3; *id.*, Ex. C, p. 7)); that he was seen by a nurse for, *inter alia*, tooth pain on October 31, 2020 (*see id.*, ¶ 13 (citing *id.*, Ex. B, p. 3; *id.*, Ex. C, pp. 1–2)); and that he was seen by a non-party physician (Dr. Vipin Shah) on November 8, 2020 who also prescribed ibuprofen (*see id.*, ¶ 14 (citing *id.*, Ex. A, 36:15-21; *id.*, Ex. B, p. 3–4; *id.*, Ex. C, pp. 3, 13, 15)).

Ex. C, p. 7)). As discussed *supra*, Dr. Litherland indicated that, while there was no noted decay to tooth #29, the B-root and enamel of tooth #29 were sensitive to the dental explorer, and the B-cusp tip of tooth #29 was chipped. (*See id.* (citing *id.*, Ex. B, p. 4; *id.*, Ex. C, p. 7)). He also performed x-rays, which showed "a space between tooth #29 and tooth #30." (*Id.* (citing *id.*, Ex. B, p. 4; *id.*, Ex. C, p. 7)). Additionally, Dr. Litherland "advised Plaintiff he would attempt composites in the B-root and B-cusp, to correct the chip in the enamel of tooth #29, which may be causing him pain; however, the composites may not solve the problem as tooth #29 or tooth #30 may be the cause of his pain." (*Id.* (citing *id.*, Ex. B, p. 4; *id.*, Ex. C, p. 7)). Dr. Litherland states that he "also advised [Johnson that] the tooth may have other issues and he may be unable to repair the cracked tooth" and that "the tooth [would] probably require extraction to resolve the pain." (*Id.* (citing *id.*, Ex. B, p. 4; *id.*, Ex. C, p. 7)). Dr. Litherland notes that he did not see Johnson again after the November 10, 2020 visit. (*See id.*, ¶ 16 (citing *id.*, Ex. A, 40:7–22; *id.*, Ex. B, p. 4; *id.*, Ex. C, pp. 7–9)).

While Johnson argues in his Deposition that "Dr. Litherland 'never gave [him] pain meds,'" (*id.*, p. 14 (quoting *id.*, Ex. A 20:23–21:3[4])), Dr. Litherland argues that "Plaintiff ultimately testified Dr. Litherland did, in fact, provide Plaintiff with ibuprofen (pain medication) and antibiotics" (*id.* (quoting *id.*, Ex. B, pp. 2, 3; *id.*, Ex. C, pp. 5, 7, 14, 16)). He also argues that "there is no evidence to support Plaintiff's claim that Dr. Litherland was deliberately indifferent in his treatment of Plaintiff's

---

[4] "Gave" is misspelled as "game" in Defendant Litherland's Motion. (*See* Doc. 62, p. 14). It is spelled correctly in Johnson's Deposition. (*See id.*, Ex. A, 20:23–21:3). The quotation above uses the correct spelling for clarity.

tooth pain" because "Dr. Litherland advised Plaintiff on numerous occasions that there were restrictions on dental examinations and procedures due to COVID" and that "Plaintiff testified he does *not* believe that Dr. Litherland could have overridden the IDOC's policies." (*Id.* (quoting *id.*, Ex. A, 51:17–52:2, 10–12)). Dr. Litherland argues that "should Plaintiff claim any delay in Dr. Litherland seeing Plaintiff or providing nonemergent dental care due to IDOC COVID restrictions, such delay is not attributable to Dr. Litherland and cannot constitute deliberate indifference." (*Id.* (citing *Hoskins v. Chapman*, No. 3:20-CV-00508-GCS, 2022 WL 558291, at *7 (S.D. Ill. Feb. 24, 2022); *Cunningham v. McBride*, No. 3:21-CV-00247-MAB, 2024 U.S. Dist. LEXIS 56885, at *12 (S.D. Ill. Mar. 28, 2024))). He argues that "the Eighth Amendment does not guarantee complete pain relief or recovery" (*id.*, p. 15 (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996))) and that "'[t]o survive summary judgment, Plaintiff must provide some evidence from which a reasonable jury could conclude that defendants were deliberately indifferent to his pain. This might include evidence that defendants 'persist[ed] in a course of treatment known to be ineffective.'" (*Id.* (quoting *Arce v. Wexford Health Sources Inc.*, 75 F.4th 673, 681, 2023 U.S. App. LEXIS 19359, *15–16)).

While Johnson argues that "Dr. Litherland did not exercise reasonable acceptable medical judgment," (Doc. 66, p. 6), Dr. Litherland argues that "Plaintiff fails to respond to Defendant's Statement of Undisputed Material Facts and they should be admitted," that "Plaintiff's purported disputes are unsupported by the evidence," and that "Plaintiff lacks foundation to challenge Dr. Litherland's dental

judgment." (Doc. 67, p. 5 (citing FED. R. CIV. P. 56(c))). While Johnson argues that he was in constant pain from his tooth (Doc. 66, p. 5), Dr. Litherland points to Johnson's Deposition, during which he stated that the prescribed medication helped with the swelling and made the tooth feel better. (Doc. 67, p. 6 (citing Doc. 62, Ex. A, 31:5–32:10)). Dr. Litherland also points to Johnson's Deposition testimony in which he states that his teeth did not hurt all the time. (*See* Doc. 67, p. 6 (citing Doc. 62, Ex. A, 34:1–6; *id.*, Ex. B, p. 3; *id.*, Ex. C, p. 7)). "He also argues that Johnson "conflates an objective assessment performed by Dr. Litherland and Plaintiff's subjective assessment of his pain and challenges Dr. Litherland's ability to determine whether Plaintiff presented with any physical indications of pain or facial swelling." (*Id.*). While Johnson argues that "a one and a half inch beard on his face [made] a visual determination impossible," (Doc. 66, p. 3), Dr. Litherland argues that "Plaintiff lacks foundation to opine that facial hair impairs a provider from determining facial swelling" and that "Plaintiff retained no expert witness qualified to offer an opinion of the same." (Doc. 67, p. 4).

Considering the above, it is clear that Dr. Litherland's treatment did not violate the Eighth Amendment. As discussed *supra*, inmates are entitled to "reasonable measures to meet a substantial risk of serious harm," *not* to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). While Johnson insists that Dr. Litherland deliberately did nothing to ease his pain, it is undisputed that Dr. Litherland examined him to the maximum extent possible given the IDOC Covid-19 lockdowns and that he prescribed ibuprofen and antibiotics, which eased Johnson's

tooth pain. (*See* Doc. 62, Ex. A, 31:5–32:10). Johnson testified in his Deposition that "I ain't saying it don't hurt all the time. Some days it just wasn't as bad as other days. It was hurting most definitely. But it just wasn't as bad as other days." (*Id.*, Ex. A, 34:3–6). He also said that the antibiotics "definitely helped it a little bit." (*Id.*, Ex. A, 35:13). Clearly, then, he cannot argue that Dr. Litherland failed to treat him *entirely*—rather, Dr. Litherland treated Johnson to the maximum extent possible in accordance with the Covid-19 protocols.

Additionally, while Johnson refers to an email sent by Lisa Weitekamp to Acting IDOC Director Latoya Hughes and IDOC Chief Legal Counsel Robert Fanning in which Ms. Weitekamp states that "it is a bit concerning that we are letting someone be in pain for a year," (Doc. 66, p. 38), Dr. Litherland testified that he last examined Johnson on November 10, 2020. (*See* Doc. 62, ¶ 16 (citing *id.*, Ex. A, 40:7–22; *id.*, Ex. B, p. 4; *id.*, Ex. C, 7–9)). As Dr. Litherland is the only remaining Defendant in this action, Johnson cannot point to other already-dismissed Defendants' purported inaction post-November 10, 2020 as proof of Dr. Litherland's deliberate indifference. The Court also notes that Johnson failed to present for a follow-up dental examination on September 2, 2020 after last seeing Dr. Litherland at his cell on August 12, 2020. (*See* Doc. 62, ¶ 11 (citing *id.*, Ex. B, p. 3; *id.*, Ex. C, p. 7)). Dr. Litherland was first made aware of Johnson's tooth pain on May 20, 2020, some 105 days before his scheduled follow-up examination on September 2, 2020. (*See id.*, ¶ 7). Thus, Johnson cannot argue that Dr. Litherland is responsible for him being in pain "for a year." (Doc. 66, p. 38).

The Seventh Circuit has noted that "[e]xercises of medical judgment—even when they prove wrong . . . —are inconsistent with a deliberately indifferent state of mind." *Owens v. Duncan*, 788 F. App'x 371, 374 (7th Cir. 2019) (citing *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc)).[5] While Johnson attempts to argue that "'Dr. Litherland's treatment of [Plaintiff's] tooth injury department from minimum professional standards' and 'Dr. Litherland did not exercise reasonable acceptable medical judgment,'" (Doc. 67, p. 6 (quoting Doc. 66, p. 6)), it is clear here that Dr. Litherland's actions to treat Johnson were in line with his own knowledge and experience as a dentist. Even if Johnson were able to provide testimony from a medical expert, like the Seventh Circuit stated in *Owens*, "a medical expert's analysis of this record—showing frequent, responsive care and pain management—could amount only to a differing opinion about the best course of treatment, which cannot support a finding of deliberate indifference." *Owens* at 375 (citing *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Thus, Johnson's opinions about his treatment do not amount to evidence of a deliberate indifference claim.

In conclusion, while Johnson has adequately argued that his tooth pain was a "serious" medical condition requiring treatment, Johnson has not met his burden to rebut Dr. Litherland's evidence that he was not deliberately indifferent to his medical needs and that there are no genuine disputes of material fact. Because a reasonable jury could not find that Dr. Litherland was deliberately indifferent in violation of the

---

[5] The Court notes that Dr. Litherland was a named defendant in *Owens*. *See* 788 F. App'x at 374.

Eighth Amendment, Dr. Litherland's Motion for Summary Judgment (Doc. 61) must be granted.

## CONCLUSION

For the reasons set forth above, the Defendant Dr. Mark Litherland, D.M.D.'s Motion for Summary Judgment (Doc. 61) is **GRANTED**. This case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: October 15, 2024**

**/s/ Stephen P. McGlynn**
**STEPHEN P. McGLYNN**
**U.S. District Judge**
